IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 21-cr-191-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **ANTHONY TYRONE PRIDE**,

    Defendant.

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE OBTAINED DURING UNLAWFUL SEARCH

In the Indictment, the Government charges Defendant Anthony Tyrone Pride with knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing a firearm and ammunition in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)

Before the Court is Pride's Motion to Suppress Evidence Obtained During Unlawful Search ("Motion"), filed on December 27, 2021. (ECF No. 27.) On January 13, 2022, the Government filed its response. (ECF No. 33.) On February 4, 2022, Pride filed his reply. (ECF No. 41.) On February 24, 2022, the Government filed its sur-reply. (ECF No. 43.)

After reviewing the parties' submissions and attached evidence, the Court concludes no evidentiary hearing is necessary to resolve the Motion. For the reasons set forth herein, the Motion is denied.

## I. BACKGROUND[1]

On May 21, 2021, Colorado Springs Police Department ("CSPD") Police Officer Nicholas Hartbauer applied for a search warrant for 4610 Rosina Avenue, Room 331, Colorado Springs, Colorado 80907.  (*See* ECF No. 27-1.)  In his affidavit, Officer Hartbauer explains the facts that gave rise to probable cause.[2]  (*Id.*)  Officer Hartbauer provides the following facts arising from independent investigation and his conclusions based on his training and experience:

(1) Pride is a convicted felon, having been convicted as recently as 2019 in two separate cases—"El Paso County Case 19CR6445" and "El Paso County Case 19CR992"—of distribution of a controlled substance and criminal mischief, respectively. (*Id.* at 2–3.)

(2) Given his prior convictions, Pride would be prohibited from possessing a firearm.  (*Id.* at 3.)

(3) As of May 21, 2021, Pride was residing at the Days Inn, Room 331 at the aforementioned address.  (*Id.*)

(4) Pride was arrested on May 21, 2021 near the lobby of the Days Inn.  During

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  This factual summary is taken from the parties' briefs and supporting exhibits.

[2] It appears as though the search warrant does not explicitly incorporate the affidavit by reference.  (ECF No. 27-2.)  However, the warrant does mention the affidavit in the first sentence.  (*See id.* ("Whereas Police Officer N. Hartbauer, 4722 has made an Application and Affidavit to the Court for the issuance of a Search Warrant . . . .").)  And the affidavit references the warrant.  (ECF No. 27-1 at 1.)

Regardless, Pride does not raise these issues in his Motion (or reply, for that matter), and therefore, the Court considers them waived.  *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

that arrest, Pride was in possession of $230 in United States currency.  Pride told law enforcement that the money was from his birthday, but his birthday had been approximately one month earlier.  Officer Hartbauer states that investigators believed that the money was from the distribution of illegal narcotics, reasoning that the denominations of cash were consistent with street level narcotics distribution.  (*Id.*)

(5) Officer Hartbauer states that he knows from training and experience that the presence of baggies and scales, when located together, are common for illegal drug distribution.  (*Id.*)

(6) Officer Hartbauer states that he knows from training and experience that drug dealers often have firearms for protection or to intimidate drug purchasers.  (*Id.* at 4.)

The affidavit also contains numerous facts and information obtained from a Source of Information ("SOI").  Officer Hartbauer provides information regarding the SOI in the affidavit, including:

(1) The SOI has a prior criminal history for drugs and theft.  (*Id.* at 3.)

(2) The SOI was cooperating with law enforcement in hopes of leniency on pending criminal charges.  (*Id.*)

(3) No promises were made to the SOI, and the SOI was not compensated monetarily.  (*Id.*)

(4) The SOI was able to identify other individuals known to law enforcement that are involved in drug activities.  (*Id.*)

(5) The SOI provided information about other criminal activity, including theft, that CSPD officers corroborated independently.  (*Id.*)

(6) The SOI was familiar with firearms and would be able to distinguish between

different types of firearms, such as a pistol and a revolver. (*Id.*) Additionally, the SOI was familiar with how firearms were loaded, types of ammunition available, and other details about firearms. (*Id.*) Officer Hartbauer submits that the SOI would likely be able to differentiate between a real and a fake firearm. (*Id.*)

(7) The SOI is familiar with drugs and is a drug user. The SOI would be able to distinguish between different types of drugs, such as methamphetamine, heroin, marijuana, and other types of drugs. (*Id.*)

Finally, in the affidavit, Officer Hartbauer explains the information that the SOI provided to law enforcement, including:

(1) The SOI had been inside the defendant's motel room "multiple times" over the last several months preceding the search warrant. (*Id.*) The SOI had seen drugs and firearms in the room each time he/she had been inside the motel room. (*Id.*)

(2) The SOI had seen methamphetamine, heroin, and prescription pills in the motel room, as well as baggies and digital scales. (*Id.*) Officer Hartbauer states that he knows from his training and experience that the presence of such items, when located together, are common in illegal drug distribution. (*Id.*)

(3) The SOI stated that he/she had seen a 12-gauge pump shotgun, which holds six rounds and has yellow shells, located under the mattress of Room 331 the week the search warrant was obtained. (*Id.* at 4.) The SOI also stated that he/she had seen a black AR15 rifle with a laser sight on it in the room earlier that same week. (*Id.*)

Officer Hartbauer swore the affidavit before a state judge, Judge Frances R. Johnson, and the judge issued the warrant on May 21, 2021. (*Id.*; ECF No. 27-2 at 2.) Officers executed the warrant that same day, locating the shotgun and yellow

ammunition that Pride now seeks to suppress in the Motion.

## II. LEGAL STANDARD

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." However, "[t]he Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a prudential doctrine created by th[e Supreme] Court to compel respect for the constitutional guaranty." *Davis v. United States*, 564 U.S. 229, 236 (2011) (internal citations and quotation marks omitted). Under the exclusionary rule, a defendant may move for suppression of evidence obtained in violation of the Fourth Amendment. *Id.* "As a general matter, if the search or seizure was pursuant to a warrant, the defendant has the burden of proof" to demonstrate that it violated the Fourth Amendment. *United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993) (internal quotation marks omitted).

## III. ANALYSIS

### A.   Whether Probable Cause Supports the Search Warrant

A court "review[ing] the sufficiency of the affidavit upon which a warrant is issued" is tasked with "simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). Such "[p]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Gates*, 462 U.S. at 238). Probable cause requires a nexus between the suspected criminal activity and the place to be searched. *United States v. Biglow*, 562

F.3d 1272, 1279 (10th Cir. 2009).  In reviewing a duly-issued warrant, a court "accord[s] a . . . judge's probable-cause finding 'great deference,'" *id.* at 1281, and because the Fourth Amendment exhibits a "strong preference for warrants," a reviewing court must "resolve 'doubtful or marginal cases' by deferring to a magistrate judge's determination of probable cause," *id.* at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984)).

In the Motion, Pride argues that the affidavit "included information that undermined the SOI's veracity and reliability" and "did not include any corroboration of the SOI's information that criminal activity was being conducted in Room 331." (ECF No. 27 at 5.)  Therefore, he contends that the search warrant "lacked probable cause under the totality of the circumstances." (*Id.*)  For the following reasons, the Court disagrees and finds that the warrant was supported by probable cause.

Courts use a "totality of the circumstances" test to determine when information from an anonymous or confidential informant can establish probable cause.  *Gates*, 462 U.S. at 238.  An informant's "veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report."  *Id.* at 230.  Veracity concerns whether there is reason to believe that the informant is telling the truth.  *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").  Reliability goes to whether the informant has provided accurate information in the past.  *Id.*  Firsthand observations from a confidential informant may support a finding of reliability.  *See United States v. Tuter*, 240 F.3d 1292, 1297–98 (10th Cir. 2001).  Lastly, when looking at basis of knowledge, a firsthand

observation is entitled to greater weight than secondhand information. *See Quezada-Enriquez*, 567 F.3d at 1233.

In *Gates*, the Supreme Court clearly stated that it did "*not agree* . . . that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230 (emphasis added). Instead, "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.*

1. <u>Veracity, Reliability, and Basis of Knowledge</u>

The Court finds that the information contained in the affidavit concerning the elements of veracity and basis of knowledge strongly supports probable cause. Further, while reliability may be the weakest of the three elements at issue here, under a totality of the circumstances test, it is not *so* lacking as to necessitate a finding that the search warrant was not supported by probable cause. *See id.* at 233 ("a deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability").

First, as explained above, veracity concerns whether there is reason to believe that the informant is telling the truth. *See id.* at 230. The SOI identified the motel and the specific room where Pride was staying, which law enforcement subsequently confirmed. (ECF No. 27-1 at 3.) Additionally, Officer Hartbauer explains that the SOI was in the motel room "multiple times" and observed very specific types of drugs and guns. (*Id.*) The Court finds particularly persuasive the level of detail with which the SOI described the type of firearms and ammunition in Room 331. For example, the SOI explained that he/she saw "a 12 gauge pump shot gun that holds six rounds and has

yellow shells" under the mattress in Room 331 "recently this week." (*Id.* at 4.)  The SOI also saw a "black AR15 rifle with a laser sight" in the motel room "earlier this week." (*Id.*)  Finally, the SOI said that there was methamphetamine, heroin, and prescription pills in the motel room. (*Id.* at 3.)

The SOI did not generically state that he/she saw "guns," "ammunition," or "drugs" in Room 331.  Rather, the SOI's detailed descriptions—down to the type of drugs and the color of the firearms and ammunition—demonstrate the confidence with which the SOI described what he/she saw in Pride's motel room and reinforces the reasons for which the magistrate judge relied on the affidavit in permitting the search. *See Quezada-Enriquez*, 567 F.3d at 1233 ("We look for 'the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity.'").  Moreover, the SOI identified other individuals as being involved in drug activities who were known to law enforcement as being involved in such activities. (ECF No. 27-1 at 3.)  Those details also support the SOI's veracity.

Next, the information in the affidavit supports a finding that the SOI had a solid basis of knowledge.  The SOI's observations were firsthand—not secondhand—and were from "multiple" visits to Pride's motel room during "the last several months." (*Id.*)  The affidavit contains details of the SOI's personal background, including that he/she is familiar with firearms, can differentiate between types of firearms, is familiar with drugs, and would be able to recognize different types of drugs. (*Id.*)  The SOI's relevant personal history, described in a fair amount of detail in the affidavit, lends credence to the magistrate judge's determination that the specific information contained in the

affidavit supported probable cause to conduct the search.  In the Court's view, all of the details explained above support a strong basis of knowledge.

Finally, the affidavit provides some indicia of the SOI's reliability, which in the Tenth Circuit entails inquiry into whether the informant has provided accurate information in the past.³  *Quezada-Enriquez*, 567 F.3d at 1233.  The affidavit emphasizes that while the SOI was cooperating with law enforcement "in hopes of leniency on pending criminal charges," the SOI was *not* made any promises regarding leniency on his/her pending charges.  (ECF No. 27-1 at 3.)  Moreover, the SOI was *not* compensated monetarily.  (*Id.*)  Finally, the affidavit discloses the SOI's involvement in illegal activities, specifically a "history for drugs and theft."  (*Id.*)

The Tenth Circuit has found that firsthand observations may support a finding of reliability, *Tuter*, 240 F.3d at 1297–98, and the Court again underscores the detailed nature of the SOI's firsthand observations of the drugs, firearms, and ammunition in Room 331.  The Court agrees with the Government's statement that all of the information included in the affidavit provided by the SOI gave "the magistrate judge sufficient background and context to assess the SOI's veracity and reliability and the information the SOI provided."  (ECF No. 33 at 9.)

Based on the foregoing, the Court concludes that the SOI's information provided probable cause for the issuance of the search warrant.

---

³ The Court acknowledges that the information in the affidavit does not provide specific facts supporting a finding that the SOI provided accurate information *in the past*.  However, the information in the affidavit *does* support the Court's conclusion that the magistrate judge had a sufficiently clear picture of the SOI and his/her background with which to evaluate the SOI's reliability and determine whether to sign the search warrant.

9

      2.      <u>Corroboration</u>

In the Motion, Pride challenges the sufficiency of the corroboration of the SOI's information, asserting that Officer Hartbauer failed to provide any specific facts about his other criminal activity, how police corroborated the information the SOI provided, or if the information led to any arrests or convictions. (ECF No. 27 at 2.) Further, Pride argues that the fact that he was a tenant of the motel on May 21, 2021 "does not sufficiently corroborate the previous observations months prior or even earlier that week, especially considering [he] was previously the renter of room #231 from May 15-May 18, 2021, and did not move into room #331 until May 21, 2021." (ECF No. 41 at 3.)

Despite Pride's contentions, the Court finds that law enforcement adequately corroborated the information the SOI provided as well as investigated Pride's connection to Room 331, in which the SOI said he/she observed drugs and guns. In the affidavit, Officer Hartbauer explains that on May 21, 2021—the day of the search—law enforcement confirmed that Pride resided at the "target residence," Room 331. (ECF No. 27-1 at 3.) Specifically, CSPD Sergeant C. Simpson obtained a list of residents at the Days Inn, which listed Pride as the "current renter" of Room 331. (*Id.*) Because check out time had passed, Officer Hartbauer explained that Pride "would likely maintain [Room 331] for the rest of May 21, 2021." (*Id.*) Officer Hartbauer explicitly states in the affidavit that he "submit[s] this information tends to corroborate information provided by the SOI." (*Id.*)

Additionally, law enforcement contacted Pride and arrested him on an outstanding felony warrant near the lobby of the Days Inn. (*Id.*) As the Government states, the fact that law enforcement was able to contact and arrest Pride in the motel's lobby further corroborates that he was staying in that motel. (ECF No. 43 at 2.) Finally,

law enforcement ran a criminal history check on Pride and discovered he had prior drug convictions, which further verified his connection to drug trafficking activities. (*Id.* (citing *United States v. Peel*, 565 F. App'x 688, 691 (10th Cir. 2014) (finding that the affidavit "included facts and corroboration highly suggestive of criminal activity" such as the police conducting a criminal history check on the defendant which showed prior drug convictions)).)

Considering the totality of the circumstances, the Court finds that the steps law enforcement took to corroborate the SOI's information were legally sufficient to establish probable cause.

**B.  Whether the Good Faith Exception Applies**

Based on the foregoing analysis, the Court need not reach the issue of whether the good faith exception to the exclusionary rule applies. Even assuming the warrant and its affidavit were deficient, the Court would nonetheless find that the good faith doctrine applies.

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–923 (1984)). Thus, a defendant can only challenge the warrant when it is "obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* (citation omitted). The Supreme Court has found that the "shield of immunity" otherwise conferred by a warrant will be lost "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely

11

unreasonable." *Id.* (internal quotations and citation omitted).

Pride argues that the search warrant affidavit consisted almost entirely of information from a SOI, who was facing criminal charges, using drugs, and had a criminal history. (ECF No. 27 at 11.) As noted above, Pride again argues that the search warrant affidavit lacked "any information that established the SOI's reliability and veracity." (*Id.*) He also reiterates his argument that officers failed to corroborate the SOI's information and "conducted almost no investigation." (*Id.* at 12.)

Despite these arguments, the Court finds that law enforcement acted in good faith reliance on a search warrant and affidavit which were both reviewed and signed by a magistrate judge. The Court explained in detail above the reasons for which the affidavit contains abundant information upon which the magistrate judge relied in concluding that the probable cause supported the warrant. The Court need not repeat that analysis here. The Tenth Circuit teaches that the magistrate judge's determination "is entitled to credence." *See United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). Moreover, as also explained above, while evidence of law enforcement's corroboration of the SOI's information is not overwhelming, neither is it close to being nonexistent. *See id.* ("[w]hen we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support, not merely whether the facts they contain are legally sufficient" (emphasis in original)).

For all the reasons explained herein, the Court concludes that the documents underlying the warrant—here, the affidavit—was not devoid of factual support. To the contrary, the SOI's information, documented in the affidavit, provides significant support

for the conclusion that evidence of a crime would be found in Room 331. Therefore, the Court finds that Pride's arguments against application of the good faith doctrine are without merit.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS:

1. Pride's Motion to Suppress Evidence Obtained During Unlawful Search (ECF No. 27) is DENIED; and

2. The Court will separately enter an Order setting a Final Trial Preparation Conference and Trial Dates later today. As a consequence, the Government's Motion to Set a Trial Date (ECF No. 44) is DENIED AS MOOT.

Dated this 14th day of April, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge